[No. 7655.]

ARCHULETA ET AL. V. JOHNSTON ET AL.

1.   PRACTICE IN THE SUPREME COURT—*Harmless Error*—An action
upon a promissory note was tried upon the theory that the defendants
were liable only as endorsers.   The refusal of the court to strike from
the complaint an allegation apparently inserted with intent to charge
them as makers, is harmless, even if erroneous.

2.   PROMISSORY NOTES—*Presentment for Payment*—A promissory
note payable at a certain bank is there presented on the day of its ma-
turity, and payment refused.   The holder then carries it to the place
of business of the maker, in the same town, and payment being there
refused, he immediately returns and deposits it in the bank.   Held a
good presentment.

3.   ——*Notice of Dishonor*, made on the day of dishonor and ad-
dressed to the endorser at a place which, at the time of the execution
of the note, he has named as his residence, is sufficient.   The payee is
entitled to rely upon such statement.

4.   EVIDENCE—*Presumptions*—A promissory note payable at a cer-
tain bank is shown to have been presented at the bank on the day of
its maturity.   It will be presumed, the contrary not appearing, that the
presentment was made during business hours.

*Error to Archuleta District Court.*—Hon. CHARLES A.
PIKE, Judge.

Mr. A. M. EMIGH, for plaintiffs in error.

Mr. T. H. Hood, Mr. A. Rex Mollette, for defendants in error.

Mr. Justice Hill delivered the opinion of the court:

This was an action against the endorsers of a promissory note. The verdict of the jury and judgment were for the plaintiffs in the sum of $3,376.70; the defendants bring the case here for review.

Before answering the defendants moved to strike from the complaint the statement that they endorsed the note at the time it was executed and delivered to the plaintiffs (by its maker The Douglas Dry Goods Co.), for the purpose of securing for said company a credit with the plaintiffs, and that said note was so executed, endorsed and delivered to plaintiffs, in payment for indebtedness for goods then sold and delivered by the plaintiffs to the dry goods company. This motion was denied and testimony was received to establish these allegations. The defendants contend that these statements and proof were for the purpose of holding the endorsers liable as makers, and as it was shown that the Arizona negotiable instrument law (where the note was made) is similar to ours, that this cannot be done, for the reason that the act itself limits their liability under the circumstances as alleged and proven to that of endorsers. They further contend that even if the defendants are to be held as endorsers, it was prejudicial error to allow this testimony to go to the jury, as it might tend to convince the jury that in reality they were makers, as under this showing they would have been, prior to Arizona's adoption of the negotiable instrument act. It is unnecessary to determine the necessity for this allegation and proof; if erroneously received, the defendants were in no respect prejudiced, for the reason the record discloses that the ruling of the trial court throughout, and the instructions, were upon the assumption that the defendants' liability was limited to that of endorsers, and that the law concerning the liability of endorsers, notice to them, etc., must be shown to have been

fully complied with in order to hold them liable. In other parts of his brief counsel for defendants concede that the only questions properly at issue were whether the note had been duly presented at the proper place, at the proper time, and in the proper manner, payment demanded and refused and proper notice given the plaintiffs in error as endorsers. The defendants received the benefit of explicit instructions upon each of these questions; they were made the only issues in the case, and we cannot conceive the showing that the note was endorsed before delivery and what the consideration for the endorsement was, could have any bearing with the jury under the instructions concerning the questions to be determined by them.

The defendants contend that the evidence fails to show a sufficient presentation and demand in order to hold the endorsers. The note was payable at the Bank of Douglas, Douglas, Arizona. The testimony discloses that on the day it fell due D. H. Johnston, one of the plaintiffs and owners of the note, presented it at this bank and demanded payment, which was refused; that he went to the place of business of The Douglas Dry Goods Company (its maker) in the same town or city, and there demanded payment of the manager in charge, which was refused, the manager saying that so far as he knew no provisions had been made for its payment; that he immediately took the note back to the Bank of Douglas and left it there. The cashier of the bank testified that the note was presented in the bank on the day it became due, September 9th, 1909; that payment was demanded of the bank and refused. The testimony of the manager of The Douglas Dry Goods Company was to the effect that some time in the afternoon on the day when the note became due, Mr. Johnston called at the company's store where he was in charge as manager, and told him the note was due and asked for payment; that he told him that so far as he knew no arrangements had been made for its payment, and that it was not paid. It is contended that in order to bind the endorsers it must have

been presented at the bank during banking hours on the day of maturity; that the evidence fails to disclose whether or not the note was presented before or after the bank closed or during banking hours. It is further claimed, that presenting it at the place of business of the maker was unwarranted, and could have no weight so far as the endorsers are concerned; that the fair intent of the act requires that when the note is payable at a bank it must remain at the bank during all of the day of maturity, unless it is shown that the maker had no funds at the bank to meet it at any time during the day; that the burden of proving this was upon the plaintiffs and having failed to make proper proof, their case must fail. The contentions are not well taken. Section 3386 of the Arizona act, in part read,

"The instrument is dishonored by non-payment when:

1. It is duly presented for payment and payment is refused or cannot be obtained."

The note was presented at both the bank where made payable and at the place of business of its makers the day it became due. The holder was advised by the manager of the company, in substance, that no provision for its payment had been made; the bank refused payment. It is true, that there is no direct statement by any witness that it was presented at the bank during banking hours; but there is sufficient to draw a legitimate inference that such was the case. It has repeatedly been held under similar or less convincing circumstances that it must be so presumed until the contrary appears.—*The Cayuga County Bank v. Hunt,* 2 Hill Rep. (N. Y.) 635; *Columbian Banking Co. v. Bowen,* 134 Wis. 218; *Fleming et al. v. Fulton,* 6 Howard's Rep. (Miss.) 473; *Reed v. Wilson,* 41 N. J. L. 29.

Complaint is made to the giving of instruction No. 4, it reads:

"Notice of dishonor or non-payment is dispensed with when after the exercise of reasonable diligence it does not reach the party sought to be charged.

If you believe from all the evidence that prior to the date of giving said notice, the defendant J. M. Archuleta told the plaintiff that his postoffice address was at Pagosa Springs, Colorado, and believing that was his postoffice address the said D. H. Johnston addressed said notice of non-payment of said note to him at Pagosa Springs, Colorado, then he exercised reasonable diligence in giving said notice."

Under the circumstances of this case, we find no objections to this instruction; the note was payable eight months after date. The uncontradicted evidence discloses that the plaintiffs were residents of Douglas, Arizona, where the note was executed; that the defendant J. M. Archuleta was a resident of Archuleta county, Colorado; that he went to Douglas, Arizona, at the time of the execution of this note, where he remained about two days. The testimony of Mr. Johnston is, that at the time of the execution of the note, Mr. J. M. Archuleta told him that he resided at Pagosa Springs, Colorado; that on the day the note became due after its payment had been refused, notice of such dishonor and refusal to pay, and demand upon each of the endorsers for payment were made and mailed the same evening by him; that such notice was mailed to J. M. Archuleta, at Pagosa Springs, Colorado.

If it is true that the defendant J. M. Archeluta, after having gone to a sister state, when endorsing a note for over $5,000, stated to one of its payees that he was then a resident of Pagosa Springs, Colorado, (which is situate in Archuleta county) we are of opinion that if Mr. Johnston, relying upon this statement and under the belief that this was his postoffice address, mailed the requisite notice to that place; that he exercised reasonable diligence in giving the notice. The question as to the truth of this statement was left to the jury. General section 3411 of the Arizona act (as offered in evidence) in part, reads:

"Where a party has added an address to his signature, notice of dishonor must be sent to that address; but if he has not given such address, then the notice must be sent as follows:

1. Either to the postoffice nearest to his place of residence, or to the postoffice where he is accustomed to receive his letters; or,

2. If he live in one place, and have his place of business in another, notice may be sent to either place; or,

3. If he be sojourning in another place, notice may be sent to the place where he is so sojourning."

Prior to the adoption of the negotiable instrument act, it had repeatedly been held that the residence of a party to a bill or note is presumed for the purpose of notice of dishonor to be the same as it was at the time he signed the instrument, although he may have removed from that place some time before without the knowledge of the holder.—8 Cyc. 244.

We think that the substance of this general rule was adopted in section 3411, *supra*. The plaintiffs resided a long distance from the home of defendants. The defendants were only temporarily in the state of the plaintiffs at the time of the execution of this note. Under such circumstances it is not to be presumed that the plaintiffs were ascertaining the place of residence of the defendants as a matter of idle ceremony, and we know of no better authority upon which they had a right to rely than the defendants' statements. Again, when the evidence is considered as a whole, it is questionable if the notice sent to Pagosa Springs (if it was so sent) was not a compliance with subdivision 2 of section 3411, *supra*, sufficient to hold this defendant; this would make the giving of this instruction, if erroneous, harmless error. This defendant's testimony was very indefinite and uncertain as contradistinguished from that of the plaintiff and other witnesses, but in any event the finding of the jury as to the facts is controlling.

Complaint is made to the giving of other instructions, isolated portions of which, when considered alone, might be subject to criticism, but when considered as a whole we do not think they are of sufficient importance to justify a re-

versal of the judgment, to which there does not appear to have been any meritorious defense; it will therefore be affirmed.

The judgment is affirmed.     ..          *Affirmed.*

CHIEF JUSTICE CAMPBELL, and Mr. JUSTICE GABBERT concur.